

## SCANNED

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUSTIN LAYSHOCK, a minor, by and through )
his parents, DONALD LAYSHOCK and )
CHERYL LAYSHOCK, individually and on )
behalf of their son, )  2006-CV-_____    **06  0110**
)
V. )
)
HERMITAGE SCHOOL DISTRICT; KAREN )
IONTA, District Superintendent, ERIC W. )
TROSCH, principal Hickory High School, and )
CHRIS GILL, Co-Principal Hickory High )
School, all in their official and individual )
capacities. )
_____ )

## FILED

### JAN 2 7 2006

CLERK, U.S. DISTRICT COUR~
WEST. DIST. OF PENNSYLV^

### VERIFIED COMPLAINT

### A. INTRODUCTION

1.    This First Amendment free-speech case presents the issue whether a school district can

punish a student for posting on the Internet, from his grandmother's home computer, a

non-threatening, non-obscene parody profile making fun of the school principal.  In

addition to an already-served ten-day suspension, the school district continues to impose

restrictions on the student, interfering with his education.  For instance, the District has

removed the student from his classes, prohibited him from participating in after-school

academic programs, and demonstrably affected his applications for admission to

universities next Fall, all of which amounts to ongoing irreparable harm.  Plaintiffs seek

injunctive relief, preliminary and permanent thereafter, as well as damages.

## B. JURISDICTION

2.      This action seeks to vindicate rights protected by the First and Fourteenth Amendments to

the United States Constitution and is brought under 42 U.S.C. §1983. The Court has

jurisdiction over this civil rights action pursuant to 28 U.S.C. §1331(a) and §1343(a)(3)

and (4). This Court has jurisdiction pursuant to 28 U.S.C. §§2201 and 2202 to declare

the rights of the parties and to grant all further relief found necessary and proper.

## C. PARTIES

3.      Plaintiff Justin Layshock is a seventeen-year old senior at Hickory High School in the

Hermitage School District. Justin lives with his mother, father and three siblings in

Hermitage, Pennsylvania.

4.      Plaintiff Donald Layshock is Justin's father. Mr. Layshock brings this action individually

and on behalf of his minor son, Justin.

5.      Plaintiff Cheryl Layshock is Justin's mother. Ms. Layshock brings this action

individually and on behalf of her minor son, Justin.

6.      Defendant Hermitage School District ("District") is a political subdivision of the

Commonwealth of Pennsylvania. The District maintains its administrative office at 411

N. Hermitage Road, Hermitage, PA 16148.

7.      Defendant Karen Ionta  is, and at all relevant times hereafter mentioned was, the

Superintendent of the Hermitage School District. Defendant Ionta has at all times

hereinafter mentioned acted under color of state law. In her capacity as Superintendent,

Ms. Ionta is responsible for, *inter alia*, ensuring that the school district and its officials act

2

in conformity with the United States Constitution and applicable federal and state laws. She is sued in both her individual and official capacities.

8.      Defendant Eric W. Trosch is, and at all relevant times hereafter mentioned was, the Head Principal at Hickory High School, which is located within the Hermitage School District. Defendant Trosch has at all times hereinafter mentioned acted under color of state law.  In his capacity as Head Principal, Mr. Trosch is obliged to act in conformity with the United States Constitution and applicable federal and state laws.  He is sued in both his individual and official capacities.

9.      Defendant Chris Gill is, and at all relevant times hereafter mentioned was, the Co-Principal at Hickory High School, which is located within the Hermitage School District. Defendant Gill has at all times hereinafter mentioned acted under color of state law.  In his capacity as Co-Principal, Mr. Gill is obliged to act in conformity with the United States Constitution and applicable federal and state laws.  He is sued in both his individual and official capacities.

## D.  FACTS

10.     Justin Layshock has been a good student in his 13 years in the Hermitage School District. Justin has previously been identified as a "gifted student" and is subject to an Individualized Education Program.  See, 22 Pa. Code §16.1, et seq.  He maintains approximately a 3.3 grade-point average.  He has in the past and is again this year enrolled in advanced-placement classes.

11.     Justin has been characterized as particularly gifted in foreign languages.  He has won

honors and awards at language competitions and has been a French tutor to middle-school students.

12.    Justin also participates in Academic Games Leagues of America ("Academic Games"), which is a non-profit organization formed in 1991 to encourage and conduct academic games competition at the local and national level.  See, http://www.academicgames.org/ In Academic Games, students try to out-think each other in the areas of mathematics, language arts, and social studies.  Justin has won awards at the Games.

13.    Justin has had one minor disciplinary infraction during his academic career, which was last year.

14.    Justin has long-planned to attend college.  This past Fall he submitted applications to four universities seeking admission beginning in Fall 2006.

15.    On approximately December 10, 2005, Justin created a parody profile of Defendant Eric Trosch on a website called "MySpace.com" (www.myspace.com).  MySpace is a private on-line community where computer users can share photos, journals and interests with other people on the Internet.  The web site has received increasing public attention in recent months and has become especially popular among young people.  See, e.g., Pittsburgh Post-Gazette, *As Teens Flock to Myspace, Parents Worry That Personal Data Posted Will Lure Predators*, January 15, 2006 (http://www.post-gazette.com/pg/06015/638279.stm).

16.    In constructing the Trosch profile, Justin used the website's template for profiles, which in addition to background information includes answers to questions such as the shoes you wore today, your weakness, your fears, your perfect pizza, your bedtime, etc.

4

17.   The profile was intended to be a parody of Mr. Trosch, and would be perceived as such by any reasonable person.  The answers to the questions were variations of the theme "big," since Mr. Trosch is a large man.  Answers included such phrases as as "big hard ass," "big faggot," "big dick," or just "big." For the question what did you do on your last birthday, it said "too drunk to remember."

18.   The website profile contained no "true threats" or obscenity, as those terms are defined in the law.  Nothing on the site could reasonably be construed as threatening or violent.

19.   Justin also copies a picture of Mr. Trosch from the school's website and included it on the profile.

20.   Justin used no school computers or resources to create the website.

21.   He created the site from his grandmother's home computer during non-school hours.

22.   Justin never brought to school a printout of the website, nor did he ever download it on a school computer.

23.   Several days after posting the parody website, Justin attempted to delete it.  He discovered that it no longer existed.

24.   On December 21, 2005, Justin and his mother were summoned to a meeting with defendants Ionta and Gill to discuss "a potentially serious matter."  Unbeknownst to them, the District's solicitor, William White, was present for the meeting.

25.   Mr. White questioned Justin about four MySpace profiles that had apparently been created.  Justin admitted that he had created the one parodying Mr. Trosch.

26.   Mr. White questioned Justin about who created the other three profiles, but Justin did not know.  Defendants seemed particularly interested in who created one of the other

5

websites.

27.    After the meeting Justin went to apologize to Defendant Trosch for creating the profile. He believed that Mr. Trosch accepted the apology.

28.    By letter dated January 3, 2006, from Defendant Chris Gill to Mr. and Mrs. Layshock, the District advised the family that an informal hearing would be held at the High School on January 6 to consider disciplinary action against Justin.  A copy of the letter is attached as Exhibit 1.

29.    The offenses charged were as follows:

> Disrespect; Harassment of a school administrator via computer/internet with remarks that have demeaning implications; Gross misbehavior; Obscene, vulgar and profane language; Computer Policy violation; (use of school pictures without authorization).

30.    On the evening of January 3, Justin and his father were called to the Hermitage police station.  An officer advised them that Mr. Trosh had asked that harassment charges be filed against Justin.  The officer indicated that he would not file any charges unless he was directed to do so by superiors.  The officer also asked whether Justin knew who created the other three websites, but Justin indicated that he did not.  To date no criminal charges have been filed against Justin.

31.    The January 6 school hearing was attended by Justin and his parents, and defendants Ionta and Gill.

32.    At the hearing, defendants advised the Layshock's that they were issuing Justin a ten-day-out-of-school suspension.  A copy of the January 6, 2006, decision notification letter is attached as Exhibit 2.  The dates were January 4, 5, 6, 9, 10, 11, 12, 13, 17 and 18.

6

33. Additionally, defendants' disciplinary action included the following:

   a.   Placing Justin in the Alternative Education Program at Hickory High School for the remainder of the 2005-2006 school year;

   b.   A ban on Justin's attendance or participation in any events sponsored by or participated in by the Heritage School District, including Academic Games and tutoring; and

   c.   A directive that he will not be allowed to participate in the June 2 graduation ceremony.

34. Defendant Ionta advised the Layshock's that the District was considering expelling Justin for the website.

35. Defendants admitted to the Layshock's at the January 6 meeting that Justin's placement in the Alternative Education Program was part of his punishment.

36. The Alternative Education Program meets for three hours each school day.  It is typically reserved for students with behavior and attendance problems who are unable to function properly in the regular classroom.

37. As a result of his placement in the Alternative Education Program, Justin is unable to attend any of his classes, including advance-placement (AP) English and American Government.

38. Mr. and Ms. Layshock met with Defendant Gill on January 11 to request that Justin be reinstated to his classes and the terms of his gifted IEP.  The Layshock's asked whether Justin could serve a different punishment -- such as community service or extra tutoring -- something that would not interfere with Justin's education.  Mr. Gill indicated that he

would discuss the matter with his superiors.  Mr. Gill called Ms. Layshock on January 17 and advised her that transfer to the Alternative Education Program would stand as the punishment.  He also indicated that some Board members wanted to impose more severe punishment.

39.    After completing his ten-day suspension, on January 19 Justin and his mother met with Defendant Gill and the director of the Alternative Education Program.  They advised Justin that he could participate in a social group that would discuss topics such as self-esteem, drug abuse, friends and behavior.  Justin declined.

40.    Students in the Alternative Education Program are located in the High School basement. They are not permitted into the High School itself, and must enter through a separate door.

41.    The Alternative Education Program lasts only three hours per day.

42.    Upon returning to school at 11:15 a.m. to commence the Alternative Education Program, Justin was advised that no assignments had been obtained from his regular teachers and that he could just "hang out."  Justin sat at his desk for an hour doing nothing while the students met in a group to discuss the values of teamwork.  Subsequently, they were split into teams, by gender, to participate in competition in which each team was given paper clips and sheets of paper to attempt to build a taller structure than the opposing team. After the exercise the group discussed what they had learned about teamwork. Justin was given no assignments for the remainder of the day.

43.    The next day Justin and the other students were paraded through the cafeteria to attend gym class.  The class consumed approximately 30 minutes of the three-hour day.

44.   Justin was given assignments from his AP English and Algebra III/Trigonometry

teachers. Justin was unable to speak with the math teacher about getting help with the

problems.

45.   On January 23 Justin received a Spanish assignment.

46.   He is not receiving assignments from every class on every day. He has received one or

two class assignments per day, indicating clearly that he is not being given all the work

assigned to students in the class.

47.   Defendants' sanctions against Justin have already resulted in profound consequences. In

addition to being deprived of class-room instruction, discussion and participation, upon

information and belief Justin will be given an "incomplete" for his second-quarter grades.

48.   Furthermore, on or about January 25 Justin received a letter from Penn State University,

one of the four schools to which he has applied for admission. The letter advised Justin

that a "Registration Hold" has been placed on his application due to a

"Dismissal/Suspension from Hickory High School." It is unknown how or why the

University had received this information, since it is supposed to be confidential under

federal-student-privacy laws. The letter requested that Justin sign a release form

authorizing the University to acquire details of the incident. A copy of the letter is

attached as Exhibit 3.On January 24 the Layshock's family attorney met with Defendant

Ionta and Solicitor White to request Justin's reinstatement to his classes. Finally, two

January 25 letters, one from the Layshock's family lawyer and the other from the

undersigned, were sent to the District's lawyers demanding Justin's reinstatement to his

classes by Friday, January 27. Late on January 26, the District's attorney refused the

9

request.

49.   The provisions in the District's disciplinary code under which Justin is being punished

are unconstitutionally overbroad and vague, on their face and as applied to Justin, in that

they, *inter alia*, fail to distinguish out-of-school speech from in-school expression and

they are not limited to student speech that causes a material and substantial disruption to

the school day.

50.   The District's vague and overbroad policies prohibit and chill speech that is protected by

the First Amendment.

51.   Defendants' punishment of Justin for creating a parody website of Mr. Trosch amounts to

retaliation for constitutionally protected activity.

52.   Defendants' insistence on punishing Justin in a way that affects his education, academic

standing and opportunities to gain admission to top universities is not only excessive and

unlawful, it is willful, wanton and malicious, causing extreme and irreparable injury.

53.   Indeed, the school's disciplinary handbook prescribes as punishment for a first major

infraction a one-day in-school suspension.  Not until a third major infraction does the

handbook prescribe a five to ten day suspension.

54.   Defendants' actions are producing ongoing irreparable harm for which there is no

adequate remedy at law.

55.   Defendants' punishment of Justin for speech and expressive activities that took place

inside the Layshock's home interferes with and usurps Mr. and Ms. Layshock's

constitutional rights as parents to direct the upbringing of their children.

56.   Justin and his parents have suffered injury as a result of the School District's actions,

including, but not limited to, emotional and physical pain and suffering and injury to his reputation.

## E. CLAIMS

### Count I: First Amendment to the United States Constitution - Justin's punishment

57.    Defendant's punishment of Justin Layshock for his parody website of Head Principal Trosch violates his rights under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and 42 U.S.C. §1983.

### Count II: First Amendment to the Constitution - District's disciplinary policies

58.    Defendants' policies and rules are unconstitutionally vague and/or overbroad, both on their face and as applied to Justin Layshock, and thus violate the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and 42 U.S.C. §1983.

### Count III:  Fourteenth Amendment Due Process - Mr. and Ms. Layshock's parental rights

59.    Defendants' punishment of Justin Layshock for constitutionally protected speech in his own home interfered with, and continues to interfere with, Mr. and Ms. Layshock's rights as parents to determine how best to raise, nurture, discipline and educate their children in violation of their rights under the Fourteenth Amendment to the U. S. Constitution and 42 U.S.C. §1983.

11

## F. PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Court provide the following relief:

(a)    Declare that the Defendants' disciplinary action against Justin for posting on the Internet the parody profile of Mr. Trosch violated his rights under the First and Fourteenth Amendments to the Constitution;

(b)    Declare that the Hermitage School District's Defendants' disciplinary action against Justin for posting on the Internet the parody profile of Mr. Trosch, which was activity performed within the Layshock home, violated Mr. and Ms. Layshock's rights under the Fourteenth Amendment to the United States Constitution;

(c)    Declare that the Hermitage School District's policies that have been and may be used to punish speech which takes place at a student's home and off of school grounds and outside of school-sponsored events are excessively vague and overbroad, and thereby violate the First and Fourteenth Amendments to the Constitution of the United States and violate Mr. and Mrs. Layshock's rights under the Fourteenth Amendment to the Constitution of the United States;

(d)    Enjoin the defendants from any continuing punishment or sanction against Justin Layshock on account of his constitutionally protected speech, including:

(i)    reinstating Justin to the classes in which he was enrolled prior to January 3, 2006 and enjoining his placement in the Alternative Education Program;

(ii)    reinstating to Justin all privileges to which he was and may be entitled as if no disciplinary infraction had occurred, including permission to participate

12

in Academic Games, middle-school tutoring and attending graduation

ceremonies;

(iii)    giving Justin full credit for his first-semester classes;

(iv)    sending letters to any university to which the District either sent

notification of the infraction or has received an inquiry about the infraction

advising that rules violations and resulting discipline was in error, and that

Justin continues to maintain a clean disciplinary record;

(v)    expunging from Justin Layshock's school records all references to the

incident in question;

(e)    Enjoin defendants from enforcing the school disciplinary code against students for

expression that takes place outside of the school or school-sponsored activities

unless it rises to a crime under the Pennsylvania Crimes Code;

(e)    Award all reasonable damages in favor of the plaintiffs and against the defendants

in an amount to be determined at trial;

(f)    Award punitive damages against Defendants Ionta, Trosch and Gill;

(g)    Award Plaintiffs' costs and attorney's fees pursuant to 42 U.S.C. §1988; and

(h)    Grant such other relief as this Court deems just and appropriate.


Respectfully submitted,

/s/ _____

Witold J. Walczak
PA ID No. 62976
American Civil Liberties Foundation of Pennsylvania
313 Atwood Street


13

Pittsburgh, PA 15213
(T) 412-681-7864
(F) 412-681-8707
(E-mail) VWalczak@aclupgh.org

Date: January 27, 2006

.

## VERIFICATION

I, Cheryl Layshock, hereby affirm under the penalties of perjury as follows:

1.     I am over the age of 18 and otherwise competent to testify.

2.     The factual allegations in the foregoing Verified Complaint are, to the best of my knowledge and belief, true and accurate.

/s/ *Cheryl Layshock*
Cheryl Layshock

January 27, 2006
date

15



**Eric W. Trosch, Head Principal**
**Chris Gill, Co-Principal**

Hickory High School
640 North Hermitage Road
Hermitage, PA 16148-3324
Telephone: 724.981.8750, ext. 1000
High School Fax: 724.347.4558

**SCHOOL DISTRICT**

January 3, 2006

Student: Justin A. Layshock      Date of Birth: February 28, 1988

Mr. & Mrs. Donald Layshock
1995 Robertson Road
Hermitage, PA 16148

RE: NOTICE OF INFORMAL DISCIPLINARY HEARING

PURPOSE:     TO CONSIDER DISCIPLINARY MEASURES OF SUSPENSION UP TO 10
DAYS AND THE POSSIBILITY OF FURTHER MEASURES BY THE
HERMITAGE SCHOOL BOARD OF DIRECTORS.

You are hereby notified that an informal hearing will be held in the Principal's Conference Room
at Hickory High School at 9:30 a.m. on January 6, 2006. (As agreed upon during the phone
conversation on January 3, 2006. )

The offenses charged are violations of the following discipline codes of the Hermitage School
District: Disruption of the normal school process: Disrespect:  Harassment of a school
administrator via computer/internet with remarks that have demeaning implications: Gross
misbehavior: Obscene, vulgar and profane language: Computer Policy violation; (use of school
pictures without authorization).

It is charged that the offense was committed on or after December 10, 2005.

At the informal hearing, the following due process requirements will be observed:
- Notification of the reason for the suspension was given in writing to
   parents/guardians and to the student.
- Sufficient notice of the time and place of the informal hearing was given. (As agreed
   upon during the phone conversation on January 3, 2006.)
- The student had the right to question any witness (es) present at the hearing.
- The student had the right to speak and produce witnesses on his/her own behalf.
- The district offered to hold the informal hearing within the first ten (10) days of the
   suspension.

Sincerely,

Chris Gill
Co-Principal

cc:   Mrs. Karen Ionta
      Mr. Eric Trosch

*Layshock v. Hermitage Sch. Dist.*
Verified Complaint - **Exhibit 1**



Eric W. Trosch, Head Principal
Chris Gill, Co-Principal

Hickory High School
640 North Hermitage Road
Hermitage, PA 16148-3324

Telephone: 724.981.8750, ext. 1000
High School Fax: 724.347.4558

SCHOOL DISTRICT

January 6, 2006

Mr. & Mrs. Donald Layshock
1995 Robertson Road
Hermitage, PA  16148

Dear Mr. & Mrs. Layshock:

This letter is written confirmation of an informal hearing  which was held in the Principal's Conference Room at Hickory High School at 9:30 a.m. on January 6, 2006.   Those present were: Mr. & Mrs. Donald Layshock, Mrs. Karen Ionta,  Mr. Chris Gill, and Justin Layshock.

Justin admitted prior to the informal hearing that he created a profile about Mr. Trosch.

This infraction is a violation of the Hermitage School District Discipline Code: Disruption of the normal school process: Disrespect: Harassment of a school administrator via computer/internet with remarks that have demeaning implications: Gross misbehavior: Obscene, vulgar, and profane language: Computer policy violation, (use of school pictures without authorization).

Justin's ten (10) day school suspension dates are as follows: January 4, 5, 6, 9, 10, 11, 12, 13, 17, and January 18, 2006.

This will be an out-of-school suspension.  When Justin returns on Thursday, January 19, 2006,  he will be placed in the Alternative Education Program at Hickory High School for the remainder of the 2005-2006 school year.  **Please report to the Main Office on January 19, 2006, at 7:30 a.m. to conduct the entrance meeting for the Alternative Education Program.**

I am making arrangements to provide assignments and textbooks for home study during the continuation of the suspension.  Please keep in mind Justin is not to attend any events sponsored by the Hermitage School District or in which the Hermitage School District participates.

Please do not hesitate to contact me if I may be of assistance to you or your child. Should you have any further questions regarding this matter, you may telephone my office at 724-981-8750, extension 1021.

Sincerely,

Chris Gill
Co-Principal

cc:  Mrs. Karen Ionta
     Mr. Eric Trosch

*Layshock v. Hermitage Sch. Dist.*
Verified Complaint - **Exhibit 2**

# PENN STATE



**DIVISION OF STUDENT AFFAIRS**
Office of Judicial Affairs

The Pennsylvania State University
135 Boucke Building
University Park, PA 16802-1503

Telephone: (814) 863-0342
Fax Number: (814) 863-2463

January 20, 2006

Justin A. Layshock
1995 Roberson Rd.
Hermitage, PA 16148

Dear Justin:

Thank you for your interest in enrolling in The Pennsylvania State University, a tradition of pride and excellence.

According to Penn State's policy, a review of your application will need to be thoroughly conducted and a meeting will need to be scheduled with me to discuss the details of a **Dismissal/Suspension from Hickory High School** before a decision on enrollment can be made.

A Registration Hold will be placed through the Office of Judicial Affairs until your enrollment is accepted. Also, we will need a signed release from you stating you give permission to **Hickory High School** to discuss your educational record with Penn State. To expedite the process, you may fax this to (814) 863-2463, Attention: JoAnna. Otherwise, please mail to the address above.

Please contact our office and ask to speak with JoAnna Wenrick to schedule this appointment at (814) 863-0342.

I look forward to working with you.

Sincerely,

William R. Huston
Associate Director

WRH/jw

*Layshock v. Hermitage Sch. Dist.*
Verified Complaint – **Exhibit 3**



# PENNSTATE

**DIVISION OF STUDENT AFFAIRS**
Office of Judicial Affairs

The Pennsylvania State University
135 Boucke Building
University Park, PA 16802-1503

Telephone: (814) 863-0342
Fax Number: (814) 863-2463

Date: _____

I am waiving my right to privacy in regards to the Family Education Right to Privacy Act (FERPA) and granting expressed permission to _____ and its custodians of educational records to disclose any and all records, documents relative to and to discuss my disciplinary history at _____to and with the Office of Judicial Affairs at the Pennsylvania State University.

I further acknowledge that I am seeking enrollment at the Pennsylvania State University and therefore grant permission for _____ to disclose any educational records requested by those officials at the Pennsylvania State University responsible for determining my eligibility to enroll there.

_____
Signature of Applicant

_____
Signature of Parent or Guardian (if applicable)

Comments:

_____

_____

_____

_____

An Equal Opportunity University