## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN LAYSHOCK, a minor, by and through his parents, DONALD LAYSHOCK and CHERYL LAYSHOCK, individually and on behalf of their son,<br><br>               Plaintiffs,<br>  v.<br><br>HERMITAGE SCHOOL DISTRICT, KAREN IONTA, District Superintendent, ERIC W. TROSCH, principal of Hickory High School, CHRIS GILL, Co-Principal of Hickory High School, all in their official and individual capacities,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  2:06-cv-116<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Before the Court for consideration and disposition is Plaintiffs' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ("Motion") (*Document No. 2*). The Court held a hearing on the Motion on January 30, 2006. For the reasons that follow, the Motion will be denied.

Background

Plaintiff Justin Layshock ("Justin") is a seventeen-year old senior at Hickory High School in the Hermitage School District. Justin fares well academically and is enrolled in advanced placement classes. He has won honors and awards at language competitions and has been a French tutor to middle school students. Justin also participates in Academic Games Leagues of America ("Academic Games"), in which students attempt to out-think each other in the subjects of math, language arts and social studies. Justin anticipates attending college, and has submitted applications for admission to four universities, including The Pennsylvania State University.

While Justin is generally an academic success, his out-of-school conduct has led to in-school punishment by Defendants. On or about December 10, 2005, Justin created what he characterizes as a parody profile (the "parody") of defendant Eric Trosch ("Trosch"), the

Principal of Hickory High School, on a website called "MySpace.com" (www.myspace.com), which is an Internet site where users can share photos, journals, personal interests and the like with other users of the Internet. Plaintiff's exh. 3. The parody was created by using the website's template for profiles, which allows website users to fill in background information and include answers to specific questions. Justin's answers to the questions centered on the theme of "big." The answers range from nonsensical answers to silly questions, on the one hand, to crude juvenile language, on the other. For example, in response to the question "in the past month have you smoked?," the website says "big blunt." In response to a question regarding alcohol use, the parody says "big keg behind my desk." In response to the question, "ever been beaten up?," the parody says "big fag." The answer to the question "in the past month have you gone on a date?" is "big hard-on." The parody also reflected that Trosch was "too drunk to remember" the date of his birthday. *Id*. Finally, the parody included a photo image of Trosch which Justin had copied from the school's website.

      Justin created the parody by using his grandmother's computer during non-school hours; no school resources were used to create the parody but for the photo. Justin informed a few close friends at school of his parody, and eventually word of the parody (as well as a few other more vulgar parodies of unknown origin) soon reached most, if not all, of the student body of Hickory High School.

      On December 21, 2005 Justin and Plaintiff Cheryl Layshock, Justin's mother, were summoned to a meeting with defendants Karen Ionta, the District Superintendent, and Chris Gill, the Co-Principal, regarding the parody.[1] At the meeting Justin admitted to having created the parody. No disciplinary action was taken against Justin at that time. By letter dated January 3, 2006, Justin and his parents were advised that an informal hearing would be held at Hickory High School on January 6, 2006 to consider disciplinary action against Justin. The specific

---

[1] Two or three other parodies of Trosch were created on www.myspace.com, but as of today there is no evidence that Justin was responsible for their creation. At the hearing various witnesses testified that the parody created by Justin was the least crude and vulgar.

2

violations of the Hermitage School District's disciplinary codes were described as follows: "Disruption of the normal school process: Disrespect: Harassment of a school administrator via computer/internet with remarks that have demeaning implications: Gross misbehavior: Obscene, vulgar and profane language: Computer Policy violation; (use of school pictures without authorization). Verified Complaint, exh. 1. At the January 6, 2006 hearing, Justin received a ten-day out-of-school suspension. Additional discipline imposed on Justin included 1) placing him in the Alternative Curriculum Education Program at Hickory High School for the remainder of the 2005-2006 school year; 2) banning him from attendance or participation in any events sponsored by or participated in by the Hermitage School District, including the Academic Games and tutoring in which Justin had participated, and 3) prohibiting him from participating in the June 2, 2006 high school graduation ceremony.

The Alternative Curriculum Education Program appears to be fairly onerous. The assigned students meet in a segregated area of Hickory High School for three hours each school day, and the Program is typically reserved for students with behavior and attendance problems who are unable to function in a regular classroom. Suffice it to say that Justin appears to be out of place in the program.

On January 27, 2006 Plaintiff filed a three-count Verified Complaint pursuant to 42 U.S.C. § 1983, as well as a Motion for Temporary Restraining Order and/or Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65. Count I alleges that "Defendant's (*sic*) punishment of Justin Layshock for his parody website of Head Principal Trosch violates his rights under the First Amendment to the United States Constitution ..." Verified Complaint at ¶ 57. Count II alleges that "Defendants' policies and rules are unconstitutionally vague and/or overbroad, both on their face and as applied to Justin Layshock, and thus violate the First Amendment to the United States Constitution ... *Id*. at ¶ 58. Count III alleges that "Defendants' punishment of Justin Layshock for constitutionally protected speech in his own home interfered with, and continues to interfere with, Mr. and Mrs. Layshock's rights as parents to determine

3

how best to raise, nurture, discipline and educate their children in violation of their rights under the Fourteenth Amendment to the U.S. Constitution ..." *Id*. at ¶ 59.[2] The Motion requests that Defendants be enjoined "from any continuing punishment or sanction against Justin Layshock on account of his constitutionally protected speech ..." Motion at p. 3. The issue of whether a temporary restraining order should issue is ripe for review.

### Standard of Review

Federal Rule of Civil Procedure 65(b) provides, in pertinent part, as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R.Civ.P. 65(b).

A party who seeks a temporary restraining order must demonstrate the following four factors: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) (discussing the nearly identical requirements for a preliminary injunction under Fed.R.Civ.P. 65(a)). Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir. 1994), *cert. denied*, 514 U.S. 1103 (1995). "The injunction should issue only if the plaintiff produces evidence

---

[2] The evidence adduced at the hearing and the arguments of counsel did not focus on this claim. Instead, Plaintiffs' evidence and arguments focused primarily on the merits of Count I and the general injustice of Justin's punishment. The Court expresses no opinion on the merits of Counts II and III at this juncture, other than that Plaintiffs have not demonstrated a reasonable probability of success on those claims at this time.

sufficient to convince the district court that all four factors favor preliminary relief." *Id.* Moreover, the plaintiff must show that the threatened injury will be *immediate*. Fed.R.Civ.P. 65(b) (emphasis added).

<u>Discussion</u>

To determine whether to grant a temporary restraining order, the Court must first analyze Plaintiffs' likelihood of success on the merits, which is the "essential element" in a determination of whether to issue a temporary restraining order. *Sypniewski v. Warren Hills Regional Bd. of Educ.*, 307 F.3d 243, 252 (3d Cir. 2002). In *Sypniewski*, the United States Court of Appeals for the Third Circuit provided the following overview of the First Amendment rights of students in the school setting:

> The public school setting demands a special approach to First Amendment disputes. Most students are minors, and school administrators must have authority to provide and facilitate education and to maintain order. The Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969). On the other hand, "[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id*. at 506. Thus, students retain the protections of the First Amendment, but the shape of these rights in the public school setting may not always mirror the contours of constitutional protections afforded in other contexts.

*Sypniewski*, 307 F.3d at 252-53 (some citations omitted).

This case began with purely out-of-school conduct which subsequently carried over into the school setting. Whether a school district may punish a student for out-of school speech has been the subject of a few recent cases in this District. *See Killion v. Franklin Regional School Dist.*, 136 F. Supp. 2d 446 (W.D. Pa. 2001); *Flaherty v. Keystone Oaks School Dist.*, 247 F. Supp. 2d 698 (W.D. Pa. 2003); *Latour v. Riverside Beaver School Dist.*, No. 05-1076, 2005 WL 2106562 (W.D. Pa. Aug. 24, 2005). After reviewing the Supreme Court's major decisions, the *Killion* court summarized the state of the law:

> These decisions reveal that, under [*Bethel School District No. 403 v. Fraser*, 478

> U.S. 675 (1986)], a school may categorically prohibit lewd, vulgar or profane language on school property.  Under *Hazelwood* [*School District v. Kuhlmeier*, 484 U.S. 260 (1988)], a school may regulate schools – sponsored speech (that is, speech that a reasonable observer would view as the school's own speech) on the basis of any legitimate pedagogical concern.  "Speech falling outside of these categories is subject to *Tinker's* general rule: it may be regulated only if it would substantially disrupt school operations or interfere with the right of others." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 214 (3d Cir.2001) (citations omitted).

*Killion*, 136 F. Supp. 2d. at 453.  The *Killion* court also observed that "courts considering speech that occurs off school grounds have concluded (relying on Supreme Court decisions) that school officials' authority over off-campus expression is much more limited than expression on school grounds," but declined to apply a heightened standard of review because "[t]he overwhelming weight of authority has analyzed student speech (whether on or off campus) in accordance with *Tinker*." *Id*. at 454-55.  At this juncture this Court will also analyze Justin's conduct in accordance with *Tinker*.[3]

Plaintiffs frame the key issue in this case as "whether a school district can punish a student for posting on the Internet, from his grandmother's home computer, a non-threatening, non-obscene parody profile making fun of the school principal."  Verified Complaint at ¶ 1.  However, this characterization of the issue fails to take into account whether Plaintiff's actions "substantially disrupt[ed] school operations or interfere[d] with the right of others." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 214 (3d Cir.2001) (citations omitted).  The Court will assume *arguendo* that Justin's initial creation of the parody was conduct protected by the First Amendment.  However, Defendants presented considerable evidence that Plaintiff's website caused actual disruption of the day-to-day operation of Hickory High School from December 12 through December 21, 2005.  Justin's parody of Trosch, as well as the other parodies of unknown origin, were accessed incessantly by students at Hickory High School, which in turn caused the school to shut down its computer system to student use from December 16 through December 21,

---

[3] However, at this juncture the Court makes no final determination as to whether Justin in fact engaged in constitutionally protected activity, or whether *Tinker* provides the ultimate governing legal standard.

2005. The lack of access to the computer system caused the cancellation of several classes and interfered with students' ability to use the computers for their school-intended purposes. During this period of time Frank Gingras, the school district's technology coordinator, was required to devote approximately 25% of his time to dealing with the disruption caused by the profiles at www.myspace.com. This time was consumed by attempts to block the numerous addresses from which students were attempting to access the profiles on school computers, as well as efforts to install additional firewall protections on the school's computer system.

It also appears as though the entire student body of Hickory High School was abuzz about the profiles, who created them, and how they could be accessed. Teachers were monitoring the comments of students and reporting students to the Principal's office, which led to nine or ten students being interviewed by Co-Principal Chris Gill, who testified that he dedicated at least 25% to 30% of his time to dealing with the disruptions and the investigation into the source of the parodies. Justin also appears to have violated the school's computer policy by misappropriating Trosch's picture and posting it on the parody, and by his attempt to access the parody numerous times while using a computer in his Spanish teacher's classroom (after the ban on student computer use was in effect). Under these circumstances Plaintiffs' actions appear to have substantially disrupted school operations and interfered with the right of others, which, along with his apparent violations of school rules, would provide a sufficient legal basis for Defendants' actions. Therefore, the Court finds and rules that Plaintiffs have not demonstrated a reasonable probability of success on the merits of the case.

The Court will next consider whether Plaintiffs, and specifically Justin, will suffer irreparable harm if a temporary restraining order is not issued. The United States Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Additionally, "[t]o show irreparable harm, the party seeking injunctive relief must at least demonstrate that there exists some cognizable danger of recurrent violation of its legal rights."

*Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) (citations and quotations omitted).

The legal foundation for "irreparable harm" is an underlying violation of Plaintiffs' constitutional rights, and the Court is unable to conclude at this juncture that such violations have occurred or are now occurring. Additionally, while Justin's placement in the Alternative Curriculum Education Program is not academically ideal, the Court is unable to find it so onerous that the harm to Justin will truly be irreparable. Therefore, the Court finds that Plaintiffs have not demonstrated that they will suffer irreparable harm if a temporary restraining order is not issued.

The third factor, whether granting preliminary relief will result in even greater harm to Defendants, does not weigh in favor of Plaintiffs. Where, as here, the underlying violation of constitutional rights has not been established, the Court has no general authority to interfere with the day-to-day operations of a public high school. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969) (noting "the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools."). Although the punishment inflicted upon Justin for his conduct is arguably excessive, the Court is not empowered to second-guess the appropriateness of Defendants' actions absent some underlying violation of his legal rights.

Finally, the Court must consider whether the public interest favors the issuance of a temporary restraining order. If the Court were to find a reasonable probability that Plaintiffs would succeed on the merits of their case, the public interest would surely favor the issuance of a temporary restraining order. However, the Court finds that in this case the public interest is best served by allowing Defendants to administer their high school and discipline their students as they determine, despite the Court's reservations regarding the appropriateness of Justin's punishment.

<u>Conclusion</u>

    Plaintiffs have not demonstrated a reasonable likelihood that they will succeed on the merits of this case, nor have they demonstrated that Justin will suffer irreparable harm if a temporary restraining order is not issued.  Additionally, the issuance of a temporary restraining order in this case would unnecessarily interfere with Defendants' broad discretion to discipline students and administer their high school as they determine, and would be contrary to the public interest.  Therefore, Plaintiffs' Motion for Temporary Restraining Order will be denied.  An appropriate Order follows.

                                                                                             McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUSTIN LAYSHOCK, a minor, by and through his parents, DONALD LAYSHOCK and CHERYL LAYSHOCK, individually and on behalf of their son,** )<br>)<br>)<br>)<br>**Plaintiffs,** )<br>v. )<br>)   2:06-cv-116<br>**HERMITAGE SCHOOL DISTRICT, KAREN IONTA, District Superintendent, ERIC W. TROSCH, principal of Hickory High School, CHRIS GILL, Co-Principal of Hickory High School, all in their official and individual capacities,** )<br>)<br>)<br>)<br>)<br>)<br>**Defendants.** ) | |

## ORDER OF COURT

AND NOW, this 31st day of January, 2006, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED and DECREED that Plaintiffs' MOTION FOR TEMPORARY RESTRAINING ORDER (*Document No. 2*) is **DENIED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Witold J. Walczak, Esquire
Email: vwalczak@aclupgh.org

John R. Gotaskie, Jr., Esquire
Email: jgotaskie@foxrothschild.com